IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY


| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WE INFORM, LLC, et al. | : | NO. 24-4037 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INFOMATICS, LLC, et al. | : | NO. 24-4041 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PEOPLE SEARCHERS, LLC, et al. | : | NO. 24-4045 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DM GROUP, INC., et al. | : | NO. 24-4075 |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DELUXE CORP., et al. | : | NO. 24-4080 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DELVEPOINT, LLC, et al. | : | NO. 24-4096 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| QUANTARIUM ALLIANCE, LLC, et al. | : | NO. 24-4098 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| YARDI SYSTEMS, INC. | : | NO. 24-4103 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DIGITAL SAFETY PRODUCTS, LLC, et al. | : | NO. 24-4141 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CIVIL DATA RESEARCH, LLC, et al. | : | NO. 24-4143 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SCALABLE COMMERCE, LLC, et al. | : | NO. 24-4160 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LABELS & LISTS, INC., et al. | : | NO. 24-4174 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| INNOVIS DATA SOLUTIONS, INC., et al. | : | NO. 24-4176 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ACCURATE APPEND, INC., et al. | : | NO. 24-4178 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ZILLOW, INC., et al. | : | NO. 24-4256 |

ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :
EQUIMINE, INC., et al.            :           NO. 24-4261

---

ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :
THOMSON REUTERS CORPORATION,      :           NO. 24-4269
et al.                            :

---

ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :
MELISSA DATA CORP., et al.        :           NO. 24-4292

---

ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :
RESTORATION OF AMERICA,           :           NO. 24-4324
et al.                            :

---

ATLAS DATA PRIVACY                :           CIVIL ACTION
CORPORATION, et al.               :
                                  :
          v.                      :
                                  :
i360, LLC, et al.                 :           NO. 24-4345
                                  :

```
ATLAS DATA PRIVACY             :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :
GOHUNT, LLC, et al.            :          NO. 24-4380
```

---

```
ATLAS DATA PRIVACY             :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :
ACCUZIP, INC., et al.          :          NO. 24-4383
```

---

```
ATLAS DATA PRIVACY             :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :
SYNAPTIX TECHNOLOGY, LLC,      :          NO. 24-4385
et al.                         :
```

---

```
ATLAS DATA PRIVACY             :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :
JOY ROCKWELL ENTERPRISES,      :          NO. 24-4389
INC., et al.
```

---

```
ATLAS DATA PRIVACY             :          CIVIL ACTION
CORPORATION, et al.            :
                               :
         v.                    :
                               :
E-MERGES.COM, INC.             :          NO. 24-4434
```

---

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| NUWBER, INC., et al. | : | NO. 24-4609 |

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| ROCKETREACH LLC, et al. | : | NO. 24-4664 |

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| BELLES CAMP COMMUNICATIONS, | : | NO. 24-4949 |
| INC., et al. | : | |

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| PROPERTYRADAR, INC., et al. | : | NO. 24-5600 |

| ATLAS DATA PRIVACY | : | CIVIL ACTION |
|---|---|---|
| CORPORATION, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| THE ALESCO GROUP, L.L.C. | : | NO. 24-5656 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEARCHBUG, INC. | : | NO. 24-5658 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERILIST, INC., et al. | : | NO. 24-5775 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| US DATA CORPORATION, et al. | : | NO. 24-7324 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SMARTY, LLC, et al. | : | NO. 24-8075 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMPACT INFORMATION SYSTEMS, LLC, et al. | : | NO. 24-8451 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DARKOWL, LLC, et al. | : | NO. 24-10600 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SPY DIALER, INC., et al. | : | NO. 24-11023 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIGHTHOUSE LIST COMPANY,<br>LLC, et al. | : | NO. 24-11443 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEOPLEWHIZ, INC., et al. | : | NO. 25-237 |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST DIRECT, INC., et al. | : | NO. 25-1480 |
| | : | |

---

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
GREENFLIGHT VENTURE CORP.,      :          NO. 25-1517
et al.                          :
```

---

```
ATLAS DATA PRIVACY              :          CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :
INNOVATIVE WEB SOLUTIONS,       :          NO. 25-1535
LLC, et al.                     :
```

---

MEMORANDUM

Bartle, J.                                          June 27, 2025

These are forty-two actions for violations of a New Jersey statute known as Daniel's Law.  N.J.S.A. 56:8-166.1. Before the court are defendants' consolidated motion as well as individual motions of certain defendants to dismiss on the ground that the plaintiffs have not stated claims upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants set forth a number of grounds in support of their motions.  At this time, the court will rule on two of

these grounds.[1]  All defendants first argue that plaintiffs fail to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Four defendants also argue Daniels Law does not apply extraterritorially and thus cannot apply to them.

I.

On a Sunday afternoon, July 19 2020, a disgruntled lawyer sought to assassinate United States District Judge Esther Salas.  After the lawyer found Judge Salas's home address on the internet, he showed up at her residence in New Jersey dressed as a delivery person.  Esther Salas, My Son Was Killed Because I'm a Federal Judge, N.Y. Times (Dec. 8, 2020), https://www.nytimes.com/2020/12/08/opinion/esther-salas-murder-federal-judges.html.  Daniel Anderl, Judge Salas's 20-year-old son, answered the door and was fatally shot by the lawyer.

---

[1]   A number of defendants have also moved to dismiss the complaints under Rule 12(b)(6) on the ground that Daniel's Law is preempted by federal law and that Daniel's Law is unconstitutional as applied.  The New Jersey Attorney General subsequently alerted the court that it had not received notice of these arguments pursuant to Rule 5.1.  Accordingly, the court has given the Attorney General time to respond, and these issues are currently deferred until full briefing has been completed.
   Certain defendants have filed motions under Rule 12(b)(2) for lack of personal jurisdiction.  See, e.g., Atlas Data Privacy Corp. v. Lighthouse List Co., LLC, 24-cv-11443 (D.N.J. filed Mar. 18, 2025).  Discovery is proceeding.  These motions will be addressed and decided at a later date.

Judge Salas's husband was also severely wounded.  In response to these crimes and the growing trend of threats and harm to judges, those in law enforcement and their families, the New Jersey Legislature passed and the Governor signed Daniel's Law in November 2020.  The Legislature has since added amendments.

Daniel's Law provides that judges, prosecutors, other law enforcement officers, and their respective immediate family members residing in the same home ("covered persons") may request in writing that any person, business, or association not disclose or make available their home addresses and unpublished telephone numbers.  N.J.S.A. 56:8-166.1.  The entity must comply within 10 days after receiving written notice.  N.J.S.A. 56:8-166.1(a)(1).  Under Daniel's Law, a covered person may sue for non-compliance for:

> (1)  actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> (2)  punitive damages upon proof of willful or reckless disregard of the law;
> (3)  reasonable attorney's fees and other litigation costs reasonably incurred; and
> (4)  any other preliminary and equitable relief as the court determines to be appropriate.

N.J.S.A. 56:8-166.1(c).  There are also criminal penalties under certain circumstances.  N.J.S.A. 2C:20-31.1.  Covered persons may assign their claims to other entities, who may bring an action in their stead as assignees.  N.J.S.A. 56:8-166.1(b).

-11-

Plaintiff Atlas Data Privacy Corporation ("Atlas") has sued in each case as an assignee of approximately 19,000 unnamed individuals, who the complaints allege are all covered persons under Daniel's Law. The complaints also include several individual plaintiffs, who are police officers or correctional officers who aver they are covered persons but who have not assigned their claims to Atlas.

Atlas owns and operates an online platform for covered persons to identify entities that disclose covered information on the internet and to send written takedown notices. To use the service, covered persons create an account on Atlas's website and set up an email address using Atlas's domain name, "AtlasMail." They can then use the platform to identify which entities are disclosing or making available their personal information and send an email, pre-generated by Atlas, requesting that the information be removed. Each covered person decides to which entities takedown notices are to be sent. All 19,000 covered persons referenced in the complaints used the Atlas platform to send their notices.

According to the complaints, each takedown notice contained the name, home address, and/or unlisted telephone number of the individual sender and a statement that the sender is a covered person under Daniel's Law. A redacted image of one of the takedown notices sent by way of Atlas's platform is

-12-

incorporated into each complaint.  The notice asked that the recipient "not disclose or re-disclose on the Internet or otherwise make available" the provided information.  Plaintiffs plead that defendants continued to disclose or make available the information in issue for weeks after the requests were sent.

The complaints are materially identical in their allegations.  They all allege that each defendant "is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons."

The complaints detail in varying degrees the manner in which covered persons' information has been allegedly disclosed or made available.  In each, the defendant's website URL is identified.  All complaints assert that "Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey."  Some complaints provide, as an exemplar, redacted screenshots of defendants' websites containing the information of an individual sender.  Other complaints aver that the defendants are disclosing information "on information and belief."

II.

In considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts in plaintiffs' complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court may also consider "exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). When there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1993) (quotation marks omitted)).

Some defendants ask the court to look further and take into account the content of defendants' websites because Atlas cites and relies upon these websites in each complaint and, in some cases, provides screenshots of certain web pages. Defendants cite two cases in which a court in a footnote stated without any analysis and almost as an afterthought that it had reviewed a website in deciding a motion to dismiss under Rule 12(b)(6).

In one case, in which plaintiff sued under the Fair Debt Collection Practices Act, an issue was whether the

-14-

defendant was an agent of another entity for purposes of collecting on plaintiff's account. Harris v. Midland Credit Mgmt., Inc., 15-cv-4453, 2016 WL 475349, at *2 n.5 (D.N.J. Feb. 8, 2016). The court took judicial notice of information on the defendant's website which identified defendant as the entity's agent. Id.

In the second action, Edelman v. Croonquist, 09-cv-1938, 2010 WL 1816180, at *1 (D.N.J. May 4, 2010), a comedian was sued for allegedly defamatory comments which she made as part of her comedy act posted on her website. It apparently was relevant that the comedian was of African-American and Swedish descent. Id. The court, after looking at her website, took judicial notice of her ethnicity and the context of defendant's comedy act and alleged defamatory statements. Id. at *1 n.1.

The website review in those cases was very narrow and involved apparently easily ascertainable and undisputed facts. In contrast, the request for review here is much more complex. Certain defendants may offer web services visible to some members of the public but not others. Others may have personal information available only in the far corners of their sites, not readily found by a simple search. The defendants do nothing to aid the court's inquiry. For the court to comb through each and every page of the website of each defendant to determine if the personal information in issue is being disclosed as to

-15-

19,000 covered persons is a totally different universe than that of the two cited cases.  Furthermore, the court does not know if the content of the websites has changed since the time when the takedown notices were sent and received.  To review websites in the manner defendants urge would take the court far beyond what it may properly consider in deciding a Rule 12(b)(6) motion.

Rule 8(a)(2) mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(3) requires "a demand for the relief sought, which may include relief in the alternative or different types of relief.  Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) explain that a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555, 556)(citations omitted).  The complaint must plead more than "labels and conclusions."  Twombly, 550 U.S. at 545.  It must plead more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557) (internal

-16-

quotations and alterations omitted).  Instead, it must recite sufficient factual content to state a claim that is plausible on its face.  Id.

III.

All defendants contend that the complaints do not satisfy the pleading requirements of Rule 8 and Twombly and Iqbal.

Defendants first assert that plaintiffs have not identified in the complaint the 19,000 assignors and the applicability of Daniel's Law to them.  These arguments are without merit.  The complaints plead that each assignor is a "covered person" under Daniel's Law.  While the complaints themselves do not state the names, home addresses, and unlisted phone numbers of the thousands of individuals who sent takedown notices through Atlas's platform, Atlas has now furnished this information to the defendants.  Pursuant to the court's order dated June 17, 2025, Atlas will also disclose by July 16, 2025 the date the assignors delivered the takedown notices as well as the category of covered person into which each assignor fits, that is whether the covered person is a judge, prosecutor, law enforcement official, child protective services officer, or a family member.  Defendants now have or will shortly have all of this pertinent information.

Second, Defendants contend that the complaints fail to plead plausibly that the takedown notices were sent by authorized persons, rather than by Atlas.  Authorized persons include covered persons.  N.J.S.A. 56:8-166.1(d).  The complaints state that "the Covered Persons . . . each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing . . . their protected information."  The fact that the senders employed Atlas's platform to do so is of no moment. A notice is not invalid because an authorized person uses a third party to deliver it.  What happened here is no different than if an authorized person sent the notice via U.S. Mail or Federal Express.  It is no different than if a grandparent, not entirely familiar with computers, enlisted the help of a grandchild to send the notice via the grandchild's computer. The complaints adequately allege that covered persons, not Atlas, sent the takedown notices.

Third, defendants argue that the complaints must be dismissed because the takedown notices themselves were not sufficient.  Daniel's Law provides that an authorized person must "provide written notice to the person from whom the authorized person is seeking nondisclosure that the authorized person is an authorized person and requesting that the person cease the disclosure of the information and remove the protected

-18-

information from the Internet or where otherwise made
available." N.J.S.A. 56:8-166.1(a)(2). The takedown notices,
which were in writing, did just that. They stated that the
individuals were "Covered Person[s]." They identified the
sender's name, address, and/or telephone number and requested
that such information not be disclosed or made available. They
cited to defendants the relevant provisions of Daniel's Law in
the New Jersey Statutes.

Carteret Properties v. Variety Donuts, Inc., upon
which defendants rely, is inapposite. See 228 A.2d 674 (N.J.
1967). There, a landlord sued its tenant under a New Jersey
Statute to repossess the leased premises. Id. at 678. That law
provided that a landlord in order to do so must give notice to
the tenant that "specif[ies] the cause of the termination of the
tenancy." Id. The New Jersey Supreme Court construed "specify"
to mean "to state precisely or in detail, to point out, to
particularize, or to designate by words one thing or another."
Id. The landlord simply notified the tenant of the tenancy's
termination "for the reason that you have committed a breach of
that covenant in your lease providing that the store premises
aforesaid are 'to be used and occupied only for the retail sale
of food and allied products.'" Id. The Court held that the
landlord merely stated a legal conclusion. Id. The notice did

not specify the nature of the alleged breach, that is how the covenant of the lease was violated.  Id. at 679.

In contrast to Carteret Properties, Daniel's Law does not use the word "specify."  Plaintiffs here followed the exact wording of the statute in transmitting the written notice and including the information required.  See N.J.S.A. 56:8-166.1(a)(2).  Unlike the landlord in Carteret Properties, plaintiffs properly notified defendants as to how defendants violated the statute in issue and so stated in the complaints.

Fourth, defendants submit that the complaints are deficient because they do not specifically assert that defendants received the takedown notices.  The complaints allege that the covered persons "sent Defendants written nondisclosure requests . . . using AtlasMail."  This is enough.  There is a well-established rebuttable presumption that when traditional mail is sent, it is delivered.  See In re Cendant Corp. Prides Litig., 311 F.3d 298, 304 (3d Cir. 2002).  There is no sound reason why this presumption should not apply equally to electronic mail.  Courts have so held.  See, e.g., Ball v. Kotter, 723 F.3d 813, 830 (7th Cir. 2013); Am. Boat Co., Inc. v. Unknown Sunken Barge, 418 F.3d 910, 914 (8th Cir. 2005).  At a later stage, of course, defendants may try to rebut any presumption.

Fifth, defendants assert that the complaints fail to allege plausibly that any defendant possessed protected information or made it available after receiving a takedown request. This is a puzzling argument. The complaints expressly state that covered persons sent notices requesting that defendants take down the protected information then being disclosed or made available. The complaints also allege that "Defendants did not cease the nondisclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law." It is hard to understand how plaintiffs could have been more explicit.

Sixth, defendants argue that plaintiffs have failed to plead that any defendant acted negligently. In its Memorandum accompanying its November 26, 2024 Order, the court held that defendants may be held liable under Daniel's Law for compensatory damages only if those defendants acted negligently. See, Atlas Data Privacy Corp. v. We Inform, 758 G. Supp. 3d 322, 341 (D.N.J. 2024). While the word "negligence" does not appear in the complaints, plaintiffs assert they have alleged facts sufficient to infer negligence. The Supreme Court in Iqbal explained that plausibility is satisfied if a plaintiff pleads sufficient conduct from which liability can be reasonably inferred. Iqbal, 556 U.S. at 678. Plaintiffs allege that covered persons sent non-disclosure requests and that defendants

-21-

continued to disclose or make available protected information for an extended period after the ten-day deadline expired. They further allege that in doing so, defendants "wantonly and repeatedly disregarded the law." Defendants at the very least have been on notice since November 26, 2024 that Daniel's Law imposes a negligence standard of culpability. They have been on notice since the complaints were served of the purported facts underlying any alleged negligent behavior. It can reasonably be inferred from what plaintiffs plead that defendants have been negligent in violating Daniel's Law. It would be formality at its worst and a needless expenditure of time and resources to grant dismissal and then allow the complaints to be amended.

Defendants argue that the complaints do not adequately allege proximate causation, a common law principle necessary for liability. They cite New Jersey's "well-recognized presumption that the Legislature has not acted to adopt a statute that derogates from the common law." Aden v. Fortsch, 776 A.2d 792, 804 (N.J. 2001). The proximate cause element in Daniel's Law is clear. The continued availability of protected information in defiance of the takedown notices is the proximate cause of the harm to covered persons. Proximate cause can reasonably be inferred from the allegations in the complaints.

Defendants assert that the complaints should be dismissed because plaintiffs fail to plead actual damages or

entitlement to liquidated damages.  Daniel's Law provides that
the court may award "actual damages, but not less than
liquidated damages computed at the rate of $1,000 for each
violation of this act."  N.J.S.A. 56:8-166.1(c).

Defendants first maintain that references to "privacy
and security" are "boilerplate" and insufficient to allege harm.
The complaints recount that Daniel's Law was enacted in response
to the murder of Judge Salas's son at the hands of her would-be
assassin.  It is also undisputed, as the complaints explain,
that "violence against police officers and judges has not
stopped" (capitalization omitted).  In some cases law
enforcement officers and judges or family members have been
killed by those who obtained their home address or phone numbers
from the internet.  The complaints also delve into specific
examples of harm pertaining to the named plaintiffs.  The
examples include the surveillance by one criminal of an
officer's home and family, targeted death threats containing
officers' home addresses, an attempted firebombing, extortion
demands, and the circling of one officer's home by armed gunmen.

The complaints of course could have been more specific
as to the harm suffered by Atlas's assignors.  Again, it can
reasonably be inferred from the cited examples and the
circumstances surrounding the passage of Daniel's Law, to say
nothing of common sense, that covered persons suffer at the very

-23-

least emotional distress and anxiety from the continued public availability of their home addresses or unlisted phone numbers after the refusal of defendants to accede to their takedown requests.  See Iqbal, 556 U.S. at 678.

Defendants challenge plaintiffs' request for liquidated damages.  The definition of the term "liquidated damages" used in Daniel's Law is derived from the common law of contracts.  See Pichler v. UNITE, 542 F.3d 380, 393 (3d Cir. 2008).  Parties may include a contractual provision for a sum certain known as liquidated damages to be paid in the event of a breach where it may be difficult to quantify the damages and the sum agreed to is a reasonable forecast of injury and not a penalty.  See id.; Restatement 2d, Contracts § 356.

Daniel's Law acts preemptively.  It does not require a covered person to wait until a specific threat or actual physical injury takes place before a remedy is available.  The Legislature did not wait to close the door until after the horse leaves the barn.  It rightly recognized that it may be difficult to quantify actual damages and thus included a liquidated damages provision.  The sum of $1,000 as compensation for emotional harm and distress for a violation of Daniel's Law is not an unreasonable amount in a world of increasing threats and physical harm to judges, prosecutors, law enforcement officials, and their families.  The Legislature's approach should come as

no surprise.  It is not an unusual feature to find a sum certain for damages incorporated into statutes.  See, e.g., N.J. Wage Payment Law, N.J.S.A. 34:11-4.10; Fair Credit Reporting Act, 15 U.S.C. § 1681n;  Copyright Act, 17 U.S.C. § 504(c).

Punitive damages have also been adequately pleaded. To obtain punitive damages under Daniel's Law, plaintiffs must prove that defendants disregarded the law willfully or recklessly.  As already discussed, plaintiffs allege that defendants received takedown requests and continue for extended periods thereafter not to comply with Daniel's Law.  For present purposes, this lapse in time is sufficient to allege recklessness.  See Huggins v. FedLoan Servicing, 19-cv-21731, 2020 WL 136465747, *7 (D.N.J. Dec. 2, 2020); cf. Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993).

Finally, plaintiffs' claims for injunctive relief will be allowed to proceed.  To plead injunctive relief adequately, plaintiffs must allege a real and immediate threat of future harm.  See Doe v. Div. of youth and Fam. Servs., 148 F. Supp. 2d 462, 478 (D.N.J. 2001).  Here, plaintiffs allege in their complaint that the disclosure of protected information is ongoing at the time of the complaint.  The alleged dangers from disclosure are real and immediate.

Accordingly, the motions of defendants under Rule 12(b)(6) to the extent they seek to dismiss the complaints for

failure to meet the pleading standards under Rule 8 and <u>Iqbal</u> and <u>Twombly</u> will be denied.

IV.

Four defendants--Infomatics, LLC, the People Searchers, LLC, We Inform, LLC, and eMerges.com, Inc.--argue that Daniel's Law by its terms does not apply extraterritorially to them as their alleged conduct occurred outside of New Jersey. <u>See</u> <u>Extraterritoriality</u>, <u>Black's Law Dictionary</u> (12th ed. 2024). The issue they raise is solely one of statutory construction.

In interpreting a statute, the objective of the court "is to discern and effectuate the intent of the Legislature." <u>Murray v. Plainfield Rescue Squad</u>, 46 A.3d 1262, 1269 (N.J. 2012). To do so, the court begins with the plain language of the statute. <u>Real v. Radir Wheels, Inc.</u>, 969 A.2d 1069, 1077 (N.J. 2009) (quoting <u>Daidone v. Betrick Bulkheading</u>, 924 A.2d 1193, 1198 (N.J. 2007)). If the "statutory language is clear and unambiguous, and susceptible to only one interpretation," the court applies that interpretation. <u>Id.</u> If, however, the statute is "silent with respect to the issue at hand," the court may look beyond the text. <u>McGovern v. Rutgers</u>, 47 A.3d 724, 732 (N.J. 2012). "Legislative intent can be discerned by background circumstances revealing the evil sought to be remedied and as thus illuminated may be read into the statute by implication with the same effectiveness as though expressly declared

-26-

therein." <u>Turner v. Aldens, Inc.</u>, 433 A.2d 439, 442 (N.J. Super. App. Div. 1981) (quoting <u>Oxford Consumer Disc. Co. of N. Phila. v. Stefanelli</u>, 246 A.2d 460, 468 (N.J. Super. App. Div. 1968)). Thus, New Jersey courts have applied extraterritorially a number of consumer protection statutes in which the "evil sought to be remedied" could easily be directed from outside state borders.

For example, in <u>Turner v. Aldens</u>, the Appellate Division of the New Jersey Superior Court addressed the extraterritorial application of the Retail Installment Sales Act ("RISA"), N.J.S.A. 17:16C-1, *et seq.*, which protects New Jersey consumers from charges by retailers of excessive interest on installment payments. <u>Id.</u> at 440. The Appellate Division held that the consumer protection law applied to out-of-state sales by out-of-state sellers because the "evil sought to be remedied [was] the charging of excessive interest to New Jersey consumers." <u>Id.</u> at 442. Because of the "nature" of the prohibited conduct, the court explained, the Legislature "endeavored to protect residents of this State from that evil irrespective of whether its source was in-state or out-of-state." <u>Id.</u>

Similarly, in <u>Oxford Consumer Discount Co. of North Philadelphia V. Stefanelli</u>, the Appellate Division addressed the Secondary Mortgage Loan Act of 1965, which regulated mortgages

made to New Jersey residents.  246 A.2d 460, 555–556 (N.J. Super. App. Div. 1968).  There, New Jersey residents executed in Pennsylvania with a Pennsylvania loan company a mortgage contract related to New Jersey real estate.  Id. at 558–59.  The court held that the statute applied to the mortgage transaction, despite its execution outside of the state.  Id. at 565. Looking to the "background circumstances revealing the evil sought to be remedied," the court explained that the purpose of the legislature was to protect New Jersey residents from mistreatment by lenders, whether that mistreatment originated in state or out of state.  Id.

In arguing that Daniel's Law does not apply extraterritorially, defendants cite to a series of New Jersey employment law cases which refuse to apply New Jersey employment statutes to employment contracts located outside of the state. See, e.g., Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 658 (D.N.J. 2008); Menzon v. Peters Advisors, LLC, 553 F. Supp. 3d 187 (D.N.J. 2021); D'Agostino v. Johnson & Johnson, Inc., 628 A.2d 305 (N.J. 1993).  These cases, however, merely "reflect[s New Jersey's] common-law employment law, which will apply extraterritorially only when the underlying clear mandate of public policy is intended to have an extraterritorial effect."  D'Agostino, 628 A.2d at 315.

Daniel's Law is not an employment statute and is more akin to the consumer protection laws analyzed in Turner and Oxford.  Daniel's Law was enacted "to enhance the safety and security of certain public officials in the justice system." N.J.S.A. 56:8-166.3; see also Kratovil v. City of New Brunswick, A-6-24, 089427, 2025 WL 1689346, at 3 (N.J. June 17, 2025).  The Legislature passed the act shortly after the tragic murder of the son of U.S. District Judge Esther Salas at their home in New Jersey by a disgruntled lawyer.  The statute specifically allows judges, prosecutors, and other law enforcement officials and certain family members to require entities not to disclose or make available their home addresses or unlisted telephone numbers.  It is analogous to RISA and the Secondary Mortgage Loan Act of 1965 in that the Legislature's aim is to protect certain categories of New Jersey residents from the dangers caused by the disclosure of personal information, whether the disclosure emanates from within or from without New Jersey's borders.

Daniel's Law is designed to protect certain groups of New Jersey.  The interest of the State of New Jersey is legitimate and compelling.  The information in issue is largely published online. Removing it from the internet is therefore crucial to Daniel's Law's efficacy.  See N.J.S.A. 56:8-166.3. The Legislature was undoubtedly cognizant of the reality that

entities holding the information in question may disclose the information in New Jersey electronically or by other means from a location originating outside of New Jersey.

The complaints allege that "Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey." The issue before the court, as noted, deals only with the narrow issue of statutory construction. How Daniel's Law will be applied in specific situations as to these and other defendants must await another day. Accordingly, the motions of Infomatics, The People Searchers, We Inform, and eMerges to dismiss on the ground that Daniel's Law does not reach their conduct will be denied.

BY THE COURT:


/s/  Harvey Bartle III
                                    J.